**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**v.**<br>**ROMEO RAMOS CRUZ,**<br>**Defendant.** | **Case No. 24-CR-317(TSC)** |

# GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, respectfully submits this sentencing memorandum for the above-captioned matter. On July 27, 2026, Romeo Ramos Cruz ("Defendant" or "Ramos Cruz") pled guilty pursuant to a cooperation Plea Agreement to one count of conspiracy to distribute cocaine for unlawful importation into the United States. For the reasons set forth herein, the Government requests that this Court sentence Defendant to 108 months of imprisonment, three years of supervised release, and a mandatory $100 special assessment. The Government's recommended 108-month sentence falls at the low end of the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 108 to 135 months as calculated by the parties and the Probation Office. Defendant is not subject to the statutory minimum of ten years as he meets the criteria set forth in 18 U.S.C. § 3553(f).

## I. INTRODUCTION

Defendant conspired with multiple individuals to sell cocaine for transportation into the United States. During the course and in furtherance of the conspiracy, Defendant was the mayor of the municipality of Santa Lucia Cotzumalguapa in Guatemala's Escuintla Department.

Beginning in November 2022 and continuing into at least March 2023, Defendant and co-conspirators repeatedly met with a third individual, who Defendant knew as "Jose," to plan cocaine

deals. The cocaine deals included a planned eight to ten kilogram deal of which four kilograms were ultimately imported into the United States, as well as a planned 250-kilogram deal.

In light of the amount of narcotics involved in the conspiracy and Defendant's key role therein, the Government's recommended 108-month sentence, which is at the low end of Defendant's Guidelines range of 108-135 months, is appropriate and just.

## II. FACTUAL BACKGROUND

### A. Offense Conduct

The following facts are drawn from the Joint Statement of Stipulated Facts. Dkt. No. 21 ("SOF").

While he was mayor of Santa Lucia Cotzumalguapa, Defendant appointed one of his co-conspirators, Edy Lubini Garcia Chavez, also known as "Chino" (hereinafter "Garcia Chavez"), to a high-ranking position in the Santa Lucia police force. Defendant installed Garcia Chavez with the knowledge that Garcia Chavez was a narcotics trafficker who distributed cocaine and heroin for sale into the United States.

Beginning in November 2022 and continuing into at least March 2023, Defendant and Garcia Chavez repeatedly met with a third individual, who Defendant knew as "Jose," to plan cocaine deals. Specifically, Defendant, Garcia Chavez, and Jose had multiple in-person meetings in Guatemala City in November 2022 and then continued to communicate through video calls in the months following. During a call with Garcia Chavez and Jose on or about November 9, 2022, while knowing that Jose was a narcotics trafficker, Defendant told Jose that "we're here at your disposal and just need to know from you what we need to do." When Defendant said that, he meant that he and Garcia Chavez would be available as needed to help Jose with narcotics trafficking.

On November 17, 2022, in an in-person meeting in Guatemala City, Guatemala, between Defendant, Garcia Chavez, and "Jose," Garcia Chavez offered to sell Jose eight to ten kilograms of cocaine in the United States. In December 2022, Garcia Chavez sold Jose four kilograms of cocaine in the United States that were imported from Guatemala. In a conversation between Defendant and Jose on or about December 2, 2022, Jose confirmed to Defendant that the four kilograms of cocaine had been delivered. During that same conversation, Defendant referred to himself as "the talent" of the drug trafficking operation. For his involvement in the deal, Defendant received from Jose—through Garcia Chavez—a payment of $2,000 U.S. dollars.

Meanwhile, Defendant, Garcia Chavez, and Jose also planned to transport approximately 250 kilograms of cocaine from Venezuela to Guatemala hidden in a shipment of cement. At the same November 17, 2022 in-person meeting in which Garcia Chavez offered to sell cocaine to Jose in the United States, Jose told Defendant and Garcia Chavez that the 250 kilograms of cocaine would be divided and concealed in four cement shipping pallets. To effectuate the cocaine shipment, Defendant agreed to provide an official letter to Jose—on Defendant's mayoral letterhead—stating that the cement shipment was a donation to the Santa Lucia municipality, the city that Defendant represented. With this official letter, Defendant knew that the cocaine shipment would be far less likely to be scrutinized by Guatemalan customs officials. In conversations with "Jose," Defendant asked whether the cocaine was of excellent quality, and Jose told him it was. Defendant also suggested that the cocaine be shipped to a specific port—Puerto Quetzal, an ocean port within the Escuintla Department. Defendant did this so that he could oversee the logistics of moving the cocaine from the port. On or about November 9, 2022, Defendant stated to Jose and Garcia Chavez: "I'll be in charge of that. I'll be in charge of removing it" and "I'll send the trailers, everything. Don't you worry."

On December 20, 2022, Defendant provided Jose with the official letter, which stated, "I am writing to respectfully request your support with the donation of cement for future infrastructure projects that will help the municipality of Santa Lucia Cotzumalguapa, Escuintla, Guatemala, and contribute to the development of our municipality. I hope to be able to count on your valuable contribution." At the bottom of the letter, Defendant signed his name and affixed the official seal of the municipality of Santa Lucia Cotzumalguapa.

### B. Procedural History

On July 3, 2024, a grand jury sitting in the District of Columbia returned an Indictment charging Defendant with conspiracy to distribute five kilograms or more of cocaine, knowing, intending, and having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963. Dkt. No. 1.

On May 15, 2025, Guatemalan authorities arrested Defendant in Guatemala on a provisional arrest warrant issued pursuant to the Indictment. Defendant was extradited to the United States on August 4, 2025.

On July 27, 2026, Defendant pled guilty to the Indictment, pursuant to a Plea Agreement. Dkt. No. 20.

## III. PRESENTENCE INVESTIGATION REPORT

### A. Statutory Penalties

Defendant is subject to a ten-year minimum sentence, though he is eligible for relief under the safety valve provision set forth in 18 U.S.C. § 3553(f). Defendant faces a maximum sentence of life imprisonment, a fine up to $10,000,000, and a term of supervised release of at least five years. Dkt. No. 20 ¶ 2.

### B. Sentencing Guidelines Calculation

The Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, not mandatory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.*; *United States v. Booker*, 543 U.S. 220, 222 (2005) (holding that the Guidelines are not mandatory). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46.

On November 23, 2026, the Probation Office issued a final Presentence Investigation Report ("PSR"), Dkt. No. 25, and Sentencing Recommendation, Dkt. No. 26. The Probation Office recommends a 102-month sentence, which factors in a six-month departure under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). Sentencing Recommendation. The PSR's Guidelines calculation mirrors the parties' calculation in the Plea Agreement. PSR ¶¶ 5-6, 63, 64.

Specifically, based on the drug quantity for which Defendant is responsible—at least 150 kilograms, but less than 450 kilograms of cocaine—and pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(2), the Probation Office calculated Defendant's base offense level at 36. PSR ¶ 25. The Probation Office applied a 2-level enhancement under U.S.S.G. § 3B1.3 because Defendant abused a position of public trust in a manner that significantly facilitated the commission of the offense, which the parties do not dispute. *Id.* ¶ 28 The PSR notes that Defendant is eligible for a two-point offender reduction pursuant to U.S.S.G. § 4C1.1. *Id.* ¶ 33. Defendant is also eligible for relief under the safety valve provision set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which decreases the offense level by an additional two levels, pursuant to U.S.S.G. § 2D1.1(a)(18). *Id.* ¶

26. Finally, a three-level reduction is appropriate here for Defendant's acceptance of responsibility, pursuant to U.S.S.G. §3E1.1. *Id.* ¶¶ 31-32. The resulting total offense level is thus 31. *Id.* ¶ 34.

The Probation Office calculated Defendant's criminal history as Category I, which the parties do not dispute. *Id.* ¶ 37. Accordingly, Defendant's Guidelines range is 108 to 135 months. PSR ¶¶ 6, 64; Dkt. No. 20 at 2.

## IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

After calculating the applicable Guidelines range, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50. In doing so, a district court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Id.* at 39.

Some of the factors courts must consider pursuant to § 3553(a) include: the nature and circumstances of the offense (§ 3553(a)(1)); the history and characteristics of the defendant (same); the need for the sentence to reflect the seriousness of the offense and promote respect for the law (§ 3553(a)(2)(A)); the need for the sentence to afford adequate deterrence (§ 3553(a)(2)(B)-(C)); and the need to avoid unwarranted sentence disparities among defendants with similar records and conduct (§ 3553(a)(6)). In this case, all § 3553(a) factors weigh in favor of a substantial term of incarceration.

### A. The Nature and Circumstances of the Offense, and the Need for the Sentence to Reflect the Severity of the Offense and Promote Respect for the Law

Defendant's conduct requires a significant sentence. While in a position of public trust, Defendant appointed his co-conspirator, an individual he knew to be a heroin and cocaine trafficker, to a chief law enforcement officer position. SOF ¶ 2. Then, from at least November

2022 to March 2023, he abused his position as mayor in an effort to import 250 pounds of cocaine into Guatemala for eventual sale into the United States. SOF ¶¶ 5, 7.

As part of the planning, Defendant met with a believed source of supply, who represented his ability to source large amounts of cocaine. SOF ¶ 3. Egregiously, Defendant sent a letter to the source of supply on his official mayoral letterhead to provide cover for the cocaine shipment so it could enter Guatemala from Venezuela without scrutiny. SOF ¶¶ 5, 6. Fully knowing that the shipment would contain cocaine and not cement as the letter represented, Defendant expressed that the shipment would, "contribute to the development of our municipality," when in fact it would do the exact opposite by further enriching his corrupt co-conspirator whom he had appointed to the police force. *Id.* Defendant then planned to transport the cocaine from its port of entry. *Id.* ¶ 5.

Defendant personally profited from the conspiracy as well. When his co-conspirator, who he enabled, successfully completed a four-kilogram cocaine delivery in the United States, Defendant was paid $2,000. SOF ¶ 4.

Defendant exhibited his willful engagement in the conspiracy by referring to himself as "the talent" of the operation and telling the source of supply that he and his co-conspirator were "at your disposal." SOF ¶¶ 3, 4.

Defendant's role in conspiring to import over 250 kilograms of cocaine into the United States represents conduct at a high level of international drug trafficking. Unlike a small-time dealer, Defendant operated at the origin of a transnational conspiracy, planning and coordinating the trafficking conspiracy. His actions endangered public safety and undermined the integrity of United States borders by promoting the illegal flow of drugs across them as well as promoted the crime and violence associated with drug distribution. The seriousness of the crime demands a sentence that reflects the grave harm such conduct poses to society.

A significant sentence is also necessary to promote respect for the rule of law. International drug traffickers routinely rely on the protection of corrupt politicians, like Defendant, and operate under the assumption that they can act with impunity. Bringing Defendant before this Court and imposing a significant sentence demonstrates to corrupt leaders around the world and the drug traffickers they support, that they will be met with meaningful consequences when they violate the laws of the United States.

**B. The History and Characteristics of Defendant**

Defendant was not born into crime. While Defendant reported growing up in poverty, he did not report witnessing domestic violence or being abused. PSR ¶ 44. Defendant completed primary schooling later in life and completed courses in governmental public administration. PSR ¶ 55. Despite an impoverished upbringing, he grew a successful trucking and agricultural business, which he owned and operated since 2008. PSR ¶ 58. In 2020, he won the mayoral election to lead Santa Lucia Cotzumalguapa municipality. PSR ¶ 59.

Defendant had the opportunity for a lawful, successful life that most in Guatemala could never attain, but he chose instead to engage in drug trafficking. As he admitted, he was not under duress at any point in the conspiracy. SOF ¶ 8. His motivation for participating in the unlawful conspiracy to traffic cocaine is best attributed to personal gain, with no regard to the harm that his actions would cause.

**C. The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by a given defendant. 18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010) (discussing goals of general and specific deterrence).

***General Deterrence***

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). Throughout the conspiracy, Defendant worked closely with Garcia Chavez, who was a known narcotics trafficker. Given the adverse societal and community impacts of drug trafficking, it is important that the Court impose a sentence that will deter others from engaging in activity that supports them. A significant sentence in this case will continue to send a consistent and clear message from the U.S. government to those operating in that part of the drug trafficking world—and those who would seek to aid and abet them while in positions of power—that severe punishment is certain when you commit crimes against the United States.

***Specific Deterrence***

As noted, Defendant knowingly and willfully engaged in drug trafficking despite having a position of public trust and a stable form of income. Defendant joined a conspiracy whose sole purpose was to import massive amounts of cocaine into the United States and took substantial steps towards realizing that goal, including delivering four kilograms of cocaine into the United States.

Given Defendant's acceptance of responsibility, the Government is hopeful that Defendant will not reoffend following his release from custody. But Defendant's background raises concerns regarding recidivism. Defendant joined a conspiracy whose sole purpose was to transport huge quantities of cocaine from South and Central American into the United States and reap the profits of the sale of that cocaine to U.S. citizens. His willingness to join a drug trafficking organization for personal gain, despite being in an elected position of power and owning and operating a business, indicate the potential to reoffend. Thus, a substantial sentence can be a meaningful step to protect both the public and Defendant from a real possibility of recidivism.

**D. Unwarranted Sentencing Disparities**

Finally, § 3553(a)(6) requires a specific evaluation of similarly situated defendants "to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." When determining whether a sentence creates an unwarranted disparity, courts should consider, *inter alia*, a defendant's criminal history, total offense level, Guidelines range, acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, and whether and to what extent cooperation was a factor at sentencing. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" and not unwarranted due to differences in conduct). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

Defendant conspired to send more than 250 kilograms of cocaine to the United States. SOF ¶ 5. The recommended 108-month sentence is at the low end of the Guidelines range of 108 to 135 months, though it is higher than the average sentence noted in the PSR for similarly situated defendants, i.e., 89 months of imprisonment. PSR ¶ 94 (noting "782 defendants whose primary guideline was §2D1.1 and Powder Cocaine was the primary drug type, with a Final Offense Level of 31 and a Criminal History Category of I"). The Government believes this recommendation is just and appropriate, given the amount of cocaine involved and Defendant's key role in the conspiracy. In addition, the Government has identified similar cases as presented below, which suggest the recommended sentence would not lead to unwarranted disparities. In selecting these cases, the Government considered defendants' conduct, Guidelines range, criminal history, extent of cooperation, acceptance of responsibility, and sentence.

**<u>Jorge Eliecer Florez Alvarez (D.D.C. 2025), Case 1:21-cr-00340-DLF</u>**

Jorge Eliecer Florez Alvarez ("Florez Alvarez") conspired with a co-conspirator, Alejandro Parra Bustamante, the leader of a Colombia-based drug trafficking organization ("DTO"), to sell cocaine for transportation into the United States. The DTO operated from a primary transportation hub for cocaine out of Colombia to Central America for eventual importation into Mexico and the United States. Florez Alvarez and his co-conspirator successfully completed two deliveries of cocaine samples totaling 15 kilograms for transportation to the United States and conspired to sell 500 to 1,000 kilograms more of cocaine to U.S. buyers.

Florez Alvarez's base offense level was 38, pursuant to U.S.S.G. § 2D1.1(c)(1). Florez Alvarez met the criteria set forth in U.S.S.G. § 4C1.1, "zero-point offender" provision, decreasing the offense by 2 levels; was safety valve eligible under U.S.S.G. § 5C1.2, resulting in a further two-level reduction; and timely accepted responsibility, resulting in a further three-level reduction. Florez Alvarez had no known criminal history. His total offense level was 31 and Guidelines range was 108 to 135 months, both the same as Defendant.

The Court sentenced Florez Alvarez to 102 months in prison (which factored in a six-month reduction under *Smith*), emphasizing that he was not a low-level dealer of cocaine, but rather worked directly with his high-level DTO co-conspirator. The court further stressed Florez Alvarez played a significant role interacting with the confidential informant in the case and planned and coordinated key aspects of the conspiracy on behalf of his co-conspirator, Parra Bustamante. *United States v. Florez Alvarez*, No. 1:21-cr-00340-DLF, Sentencing Tr. at 23–27 (D.D.C. 2025) (ECF No. 97).

Similarly, Defendant was not operating as a low-level cocaine dealer. Instead, he was directly coordinating the smuggling of large amounts of cocaine across international borders and

providing political cover for the activity. Moreover, just as with Florez Alvarez, Defendant coordinated directly with the believed source of supply, coordinating key aspects of the conspiracy. Sentencing Defendant to the Government's 108-month proposed sentence would, thus, be in line with this case and present no sentencing disparity.

**Defendant B (D.D.C. 2025)**[1]

Defendant B worked to import cocaine from Mexico into the United States on behalf of a DTO. He aided the DTO by locating sources of supply of cocaine in Costa Rica, Panama, Venezuela, and Colombia, and transporting that cocaine to the United States. Defendant attempted to arrange a purchase of 300 kilograms of cocaine in a foreign country, and he arranged the sale and delivery of four loads of 30 kilograms or less of cocaine to a buyer in the United States.

Defendant B's base offense level was 38, pursuant to U.S.S.G. § 2D1.1(c)(1). He met the criteria set forth in U.S.S.G. § 4C1.1, "zero-point offender" provision, decreasing the offense by 2 levels; was safety valve eligible under U.S.S.G. § 5C1.2, resulting in a further two-level reduction; and timely accepted responsibility, resulting in a further three-level reduction. Defendant B had no known criminal history and his base offense level was 31, the same as Defendant's base offense level, resulting in the same Guidelines range.

Defendant B pled guilty pursuant to a cooperation plea agreement and the Government recommended a 15 percent reduction from the low end of the Guidelines range of 108, which the court adopted, sentencing Defendant B to 86 months (which factored in a reduction of six months, from 92 to 86, pursuant to *Smith*).

Like Defendant B, Defendant Cruz was similarly integral to the conspiracy to traffic

[1] Due to sealing, references to Defendants B and C have been anonymized. The Government will provide those defendants' names and case numbers to the Court *ex parte* upon request.

cocaine into the United States. And just like Defendant B's conspiracy, Cruz's conspiracy ultimately resulted in some quantities of cocaine being trafficked into the United States. Unlike with Defendant B, the Government is not seeking a sentence reduction pursuant to U.S.S.G. § 5K1.1 for Defendant Cruz. Without the reduction for substantial assistance, Defendant B would have received the sentence for which the Government is advocating here, absent the six-month *Smith* adjustment. As such, no sentencing disparity exists between this case and Defendant B's sentencing.

**Defendant C (D.D.C. 2013)**

Defendant C conspired with others to transport thousands of kilograms of cocaine out of Colombia by boat, personally helping to load cocaine onto a boat on one occasion and crewing a boat on another. Defendant C pleaded guilty to being accountable for at least 150 kilograms of cocaine, which resulted in a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(c)(1) at the time. Defendant C had a criminal history category of I, received a two-level downward adjustment pursuant to U.S.S.G. § 5C1.2(a)(1)-(5), and a three-level adjustment for acceptance of responsibility, for a total offense level of 33 and Guidelines range of 135 to 168 months.

Defendant C proffered with the Government on one occasion and was willing to testify at trial against a co-defendant, but provided no substantial assistance that warranted a U.S.S.G. § 5K1.1 motion. Thus, the Government recommended a sentence at the low end of the Guidelines range of 135 months, and Defendant C was sentenced to a term of 120 months. In justifying the 120 months, the court highlighted as one mitigating circumstance the lack of evidence showing that profits flowed back to brokers or suppliers higher than Defendant C in the distribution chain, thus indicating that the DTO leadership was not directly profiting off of his illegal activities. That mitigating factor does not exist here. In Defendant Cruz's case, profits from the conspiracy did

flow back to his co-conspirator Garcia Chavez, who paid Cruz for his participation, and had the 250-kilogram deal occurred, Garcia Chavez would have profited substantially from Cruz's involvement in the conspiracy, including the fraudulent letter he wrote as cover for the cocaine shipment. As such, the Government's recommended 108-month sentence would not create an unwarranted sentencing disparity as compared to Defendant C.

## V. CONCLUSION

For the reasons set forth above, the Government recommends 108 months of imprisonment, three years of supervised release, and a mandatory $100 special assessment.

Respectfully Submitted,

Dated: November 24, 2026

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice

By: */s/ Roger Polack*

Roger Polack
Trial Attorney
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
202-305-3995
Roger.Polack@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Government's Sentencing Memorandum was served through the ECF filing system to counsel of record for Defendant this 24th day of November 2026.

By: *_/s/ Roger Polack_*
Roger Polack
Trial Attorney
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice